**UNITED STATES DISTRICT COURT**  **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-180 (4) |
| | § | |
| AMANDA BONEL | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Amanda Bonel's ("Bonel") Motion Under 18 U.S.C.

§ 3582(c)(1)(A)(i) to Modify Her Sentence (#361), wherein Bonel requests that the court modify

her sentence and immediately release her to home confinement due to the threat of Coronavirus

Disease 2019 ("COVID-19"). United States Probation and Pretrial Services ("Probation")

conducted an investigation and recommends that the court deny the motion. The Government filed

a response in opposition (#362). Having considered the motion, the Government's response, the

record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On November 12, 2014, the United States Grand Jury for the Eastern District of Texas

returned a single-count Indictment charging Bonel and 8 codefendants with Conspiracy to Possess

with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846. On October 29,

2015, pursuant to a non-binding plea agreement, Bonel entered a plea of guilty. Bonel stipulated

to supplying coconspirators with gram quantities of methamphetamine (actual) from various

sources for further distribution in the Eastern and Northern Districts of Texas and was held

accountable for the distribution of 1.5 kilograms of methamphetamine (actual), while also

possessing firearms, during the term of the conspiracy. On March 14, 2016, the court sentenced

Bonel to 188 months' imprisonment followed by a 5-year term of supervised release.  Bonel is currently housed at FPC Bryan in Bryan, Texas, and her projected release date is April 8, 2028.

According to Bonel, she suffers from depression with anxiety attacks and minor sclerosis, which she asserts make her particularly vulnerable to contracting and experiencing complications from COVID-19.  Bonel also contends that she is needed at home to care for her 77-year-old grandmother.  The Government argues that the court should dismiss Bonel's motion without prejudice for failure to exhaust administrative remedies or deny Bonel's motion on the merits because she has failed to present "extraordinary and compelling reasons" warranting a sentence reduction.

II.    Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release.").  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

3

Here, Bonel requests that the court waive the requirement that she exhaust her administrative remedies before seeking relief from the court. Bonel also states, however, that "the BOP has not so much as acknowledged receipt of her request for home confinement, an arguably lower bar to relief than compassionate release," and claims that she "sought relief from the Warden of the prison and submitted a cop-out (communication) with staff well over 30 days prior to this filing." Probation was unable to verify that Bonel had submitted a request to the warden of her facility for release or other accommodation based on COVID-19. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period, as suggested by Bonel. *See Alam*, 2020 WL 2845694, at *1 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Without

4

regard to whether Bonel complied with the exhaustion requirement before filing the current motion, nothing in her motion indicates that extraordinary and compelling reasons exist to modify her term of imprisonment.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

5

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Here, Bonel, age 36, contends that she is eligible for compassionate release due to her medical conditions, family circumstances, and COVID-19. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Bonel's Presentence Investigation Report ("PSR"), which was prepared in 2016, indicates that she has a history of depression and anxiety. The PSR further states that Bonel reported having scoliosis and arthritis, which were not confirmed by her medical records, and received treatment for lower back pain. Bonel provides no records to establish that she currently suffers from depression, anxiety attacks, or minor sclerosis. Nevertheless, none of her self-reported medical conditions is terminal or substantially diminishes her ability to provide self-care. Hence, Bonel has failed to establish that qualifying medical conditions exist that would constitute extraordinary and compelling reasons to reduce her sentence.

Bonel claims that she is needed at home to care for her 77-year-old grandmother, who is unable to work, at high risk of complications from COVID-19, and scarcely leaves the house. Although the USSG acknowledges that extraordinary and compelling reasons may exist with

respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Bonel's contention that she "is needed at home to help her grandmother," while commendable, does not meet the requirements for family circumstances that establish extraordinary and compelling reasons for release from imprisonment. Furthermore, Bonel asserts that she has plans to reside with her mother and stepfather in Lamar, Mississippi, if she is released to home confinement. There is no explanation, however, as to why Bonel's assistance would be needed if her grandmother is already living with her mother and stepfather.

Thus, Bonel's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A)

. . . is that when a defendant brings a motion for a sentence reduction under the amended

provision, the Court can determine whether any extraordinary and compelling reasons other than

those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination

regarding the presence of extraordinary and compelling reasons with respect to Bonel for any

reason.  In exercising its discretion, the court also finds that no extraordinary and compelling

reasons exist in relation to Bonel's situation.  As of June 25, 2020, the BOP reports that no

inmates have tested positive for COVID-19 at FPC Bryan where Bonel is housed.  Bonel maintains

that she cannot avoid exposure to the virus that causes COVID-19 due to prison overcrowding and

there being no way to distance herself from other inmates.  Although Bonel expresses legitimate

concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak

within her correctional facility or that the facility is specifically unable to treat her, if she were to

contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at

597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a

particular prison alone cannot independently justify compassionate release, especially considering

BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.");

*United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2,

2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness

in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary

to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5

(W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL

1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary

8

and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Bonel has failed to establish that a qualifying medical condition, family circumstances, or other reasons exist that would constitute extraordinary and compelling reasons to modify her sentence.

The court also finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). The nature and circumstances of Bonel's offense entail her participation in a drug trafficking conspiracy involving the distribution of 1.5 kilograms or more of methamphetamine (actual), her living with a codefendant who traded stolen property for drugs for over 3 years, the discovery of stolen property, 5 firearms, methamphetamine, and various other drugs during a search of the residence she shared with the codefendant, her selling methamphetamine to a confidential source from a motel in McKinney, Texas, and her admission that she sold from 0.2 grams up to 1.7 grams of methamphetamine on a daily basis and that she transported and sold a total of approximately 9 pounds of methamphetamine while living with the codefendant. She also continued to visit the codefendant after she moved out and made purchases of methamphetamine for herself while she was living with her mother, the person she now proposes as her "guardian" upon her release. Bonel's criminal history includes prior convictions for possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and manufacture/delivery of a controlled substance. In addition, her PSR indicates that she used methamphetamine daily, smoking 1 gram per day, from age 28

until shortly before her arrest at age 31.  Consequently, the court cannot conclude that she would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844, at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 4,465 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public,

meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Bonel's track record is similarly a poor one.

In short, Bonel has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

11

III.    Conclusion

Consistent with the foregoing analysis, Bonel's Motion Under 18 U.S.C. § 3582(c)(1)(A)(i)

to Modify Her Sentence (#361) is DENIED.

SIGNED at Beaumont, Texas, this 25th day of June, 2020.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

12